## HOUSE v. HOUSE. (No. 2253.)

(Court of Civil Appeals of Texas. Texarkana. April 28, 1920. Rehearing Denied May 27, 1920.)

**1. Wills ⊜⇒372—Trial court exclusive judge of facts and credibility of witnesses.**

In proceedings to probate a will, the trial judge was the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given their testimony.

**2. Evidence ⊜⇒590—Court could disregard testimony of interested witness.**

The trial court, in proceedings to probate a will, had a right to discredit any portion of the testimony of proponent, an interested witness, which he regarded as having been colored by her interest.

**3. Appeal and error ⊜⇒931(5)—Court must assume trial judge disregarded interested testimony.**

Court of Civil Appeals must assume trial court disregarded any portion of testimony of interested witness which he regarded as colored by her interest, if assumption is necessary to sustain judgment rendered.

**4. Trial ⊜⇒142—Undisputed evidence, giving rise to different inferences, presents a question of fact.**

That evidence concerning material issues was undisputed does not make them any the less issues of fact, as it is only when reasonable minds would not differ as to the inferences to be drawn from a given state of facts that the question becomes an issue of law.

**5. Wills ⊜⇒288(1)—Proponent, 13 years after testatrix's death, had burden to show she was not in default.**

Under Rev. St. 1911, art. 3248, providing that no will shall be admitted to probate after 4 years from testator's death, unless the party applying was not in default, proponent, proceeding for probate 13 years after testatrix's death, had the burden to show she was not in default.

**6. Wills ⊜⇒260 — Coverture of testatrix's daughter-in-law did not excuse failure to move for probate in time.**

A married woman, daughter-in-law of testatrix, is not exempt from the limitation of

═══════

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Rev. St. 1911, art. 3248, requiring proceedings for probate of a will to be instituted within 4 years from the death of testator, though her coverture probably might be looked to as a circumstance tending to excuse her delay.

**7. Wills 🔑300—Evidence held to justify finding testatrix's daughter-in-law failed to exercise proper diligence.**

In proceedings to probate will by testatrix's daughter-in-law, divorced after testatrix's death, evidence *held* to justify finding of trial court that daughter failed to exercise degree of diligence imposed by Rev. St. 1911, art. 3248, on those who have right to probate testamentary instruments, in failing to move for probate of will for 13 years after testatrix's death, and 9 years after her own divorce.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Proceeding for probate of the will of Mary West House by Rosa Cave House, contested by Henry C. House. From an order refusing probate, proponent appeals. Affirmed.

A. L. Abraham, of Los Angeles, Cal., and Kittrell & Kittrell, of Houston, for appellant.

E. P. & Otis K. Hamblen and A. R. & W. P. Hamblen, all of Houston, for appellee.

HODGES, J. This appeal is from an order of the district court of Harris county refusing the probate of an instrument claimed to be the last will and testament of Mrs. Mary West House. The facts show that prior to 1904 Mrs. Mary West House resided with her husband in Houston, Tex. They had but one child, Henry C. House, the appellee in this suit, who was at that time married to the appellant Rosa Cave House. Some time prior to her death Mrs. House prepared in her own handwriting and placed in the family safe the following instrument:

"Mary House, born New York, July 17, 1834 —Texan since March, 1838—a Daughter of the Republic when it was no United States, but under brave Sam Houston: Wishes Ladies Parish Association, Ladies Annex of Y. M. C. A. and all old Houstonians to attend my obsequies. My nephew Jonie to have my horse Ned and my carriage. My diamonds to my niece L. B. My Solitaire ring and gold thimble to Eva House, Cali. Whatever furniture Rosa does not want give to my Cousin Emily— Henry knows who—I have forgotten her name, am sorry to say. May 3d, 1900. When Mr. House dies Rosa and Henry will have all we own but must see that Joe never wants. Want to be dressed in white cashmere with white satin ribbon, white silk hose and nice white underwear. Laid out by my old friends Carrie Keegans and Lottie C. Barret, if living themselves, with Tillie the nurse to help them."

This instrument was inclosed in an envelope which bore the following indorsement in the handwriting of Mrs. House:

"Mrs. H. C. House.
"Mother's Wishes, open if anything happens."

After the death of Mrs. House, which occurred on May 8, 1904, the envelope was opened by Henry C. House. The contents were read by him, the appellant (his wife), and her two sisters. The wishes of Mrs. House with reference to her burial and the disposition of the personal property mentioned were observed and her directions carried out. The instrument has continuously since that time, until it was produced in court on the trial of this case in 1918, remained in the possession of Henry C. House. Mr. House, Sr., survived his wife for a few years, and died some time during the year 1911. In the latter part of 1917, more than 13 years after the death of Mrs. Mary West House, the appellant filed her application in the county court of Harris county to probate an instrument, the substance of which is described as follows:

"I, Mary West House, of the state of Texas, born in the state of New York, do hereby will and bequeath to my daughter Rosie and my son, Henry, all of the property that I own or possess, share and share alike.

"I leave to my niece Lillian Barden all of my diamonds and cut glass.

"I want Rosie to see that my nephew Joe shall never want, and any household effects that she cannot use I want her to give to my nephew, Johnny Tucker. I want my friends, Carrie Keegans and Lottie Barret to lay me out, and I wish to be dressed in white."

As a reason for not presenting the writing itself, the proponent alleged that it was not at that time and never had been in her possession or under her control, and was not then within the confines of the state of Texas. The above application was contested by Henry C. House upon two grounds: (1) That more than 4 years had elapsed since the death of Mrs. Mary West House; and (2) because no such will as that alleged in the application had been executed by the deceased. The contestant admitted that a written memorandum of her wishes had been left by his mother, but denied that it was a will or a testamentary document entitled to probate. On the trial in the county court the written instrument heretofore set out was produced in evidence, and it appears to be now agreed by the attorneys representing both parties that such instrument was the memorandum executed by Mrs. House. The county court refused the application, and an appeal was prosecuted to the district court by the proponent. While the case was there pending she filed an amended application, asking that the written instrument produced by the contestant in the county court be probated as the last will of Mrs. Mary West House. The contest was continued upon the two grounds above mentioned—that is, that the right to have the instrument probated as a will was barred by the statute of limitations, and that

it was not a testamentary document entitled to probate. From a judgment of the district court, refusing the application to probate, this appeal is prosecuted.

The trial court filed findings of fact and conclusions of law, from which we quote the substance, in so far as it embraces facts material to be considered in the determination of the question now presented:

After the death of Mrs. Mary House in 1904 the contestant and proponent continued to live together as husband and wife until their divorce in March, 1908, at which time their property rights were adjusted by a decree of the court as well as by deeds; but the settlement then made did not include or dispose of any interest of the proponent in the estate of Mrs. Mary West House, claimed by virtue of the alleged will. While the divorce proceedings were pending, the proponent mentioned to her attorney, Capt. James A. Baker, the existence of a written instrument left by Mrs. Mary West House, and described substantially the contents thereof, but told him that the instrument was not signed, whereupon her attorney advised her that it was not a will. The contestant had been in possession of the alleged will and envelope since the date of his mother's death. He had never denied its existence, had never refused to exhibit the same, and was never called on by the proponent to produce the same until the trial in this suit. The contestant continued to reside in Houston after his divorce until the fall of 1914, since which time he has maintained a home at Pasadena, Cal. In 1914 the proponent had a phone conversation with the contestant, during which she asked him if he intended to probate his mother's will, and he replied that he did not. She thereupon informed him that she considered that the will should be probated. The will referred to by her in that conversation was the instrument filed for probate in this suit, and which she had read immediately after the death of Mrs. Mary West House, in 1904. Proponent, however, had a different impression at the time of its verbiage and form, as was made to appear from her pleadings and testimony. At all times subsequent to their divorce the relations between the contestant and the proponent were unfriendly. The contestant has performed the directions contained in the written instrument offered for probate with reference to the horse, carriage, diamonds, solitaire ring, gold thimble, and furniture of Mrs. Mary West House; and if those directions are testamentary there now exists no necessity to probate said instrument for the purpose of executing them.

The court then concluded as a matter of law that in executing the instrument offered for probate Mrs. Mary West House did not contemplate or intend that proponent should receive one-half of her estate, but that the language used was merely an explanation of why she had not by the instrument given proponent and contestant mementoes in the way of trinkets. He also concluded that, since proponent knew that Mrs. Mary West House had executed the above instrument, knew that contestant was in possession of the same, had read it in 1904, and did not thereafter ask that it might be examined by her or her attorneys, that since she' was contending in 1914 that said instrument was a will, and was then told by contestant that he would not probate it, in failing to move for the probate of the instrument or any instrument until 1917, she had not met the requirements of the statute, or shown herself entitled in equity to the probate of that instrument at this time, even if it be a will.

There are two assignments of error presented by the appellant. The first complains of the ruling of the court in holding that the instrument offered for probate was not a will; the second complains of the action of the court in holding that the proponent was in default in failing to sooner offer the instrument for probate. Logically, we think, the second assignment of error should be the first considered, since, if it should be determined against the appellant the difficulties presented in the other assignment will be obviated. Article 3248 of the Revised Civil Statutes is as follows:

"No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown that the party applying for such probate was not in default in failing to present the same for probate within four years aforesaid. And in no case shall letters testamentary be issued where a will is admitted to probate after four years from the death of the testator."

[1-4] Thirteen years had elapsed between the death of Mrs. Mary West House and the first attempt made to probate that instrument as a will. A little more than 9 years of that time the proponent was a feme sole. The court to whom were submitted the issues of fact concluded that the proponent was in default, and for that reason was not entitled to have the instrument probated, even if it should be considered a will. The question before us is: Was the evidence such as to require the court to make a contrary finding? We are of the opinion that it was not. In this instance the trial judge was the exclusive judge of the facts proved, of the credibility of the witnesses, and of the weight to be given to their testimony. Proof of the conditions which tended to excuse the proponent for not sooner presenting the instrument for probate depended almost exclusively upon her own testimony. She was an interested witness, and the court had a right to discredit any portion of her testimony which he regarded as having been colored by that interest. We must assume that he did this, if such an assumption is necessary to sustain the judgment rendered. That the evidence concerning material issues was undisputed does not

make them any the less issues of fact. It is only when reasonable minds would not differ as to the inferences to be drawn from a given state of facts that the question becomes an issue of law. The question before us may be stated in this form: The proponent knew of the existence of the instrument offered for probate, and was aware of its contents at the time the alleged testatrix died. She had the opportunity continuously thereafter to offer it for probate. She failed to offer it for more than 13 years. Query: Did she, under the circumstances, exercise reasonable diligence in filing her application? To say that reasonable minds might differ as to the answer that should be given to that question is, we think, to indulge as much liberality in favor of the appellant as she can justly claim. Had a jury been impaneled in the case, clearly that question should have been submitted to them.

[5] Under the terms of the statute quoted, the proponent had the burden of showing that she was not in default. The only ground relied upon to excuse her delay is that she was advised by her attorney that the instrument in question was not a testamentary document, and therefore was not subject to probate as a will. The term "default" means failure to do the act required; but, as used in the statute quoted, it means a failure due to the absence of reasonable diligence on the part of the party offering the instrument. When that party knows of the existence of the instrument and has full opportunity to file it for probate, a delay occasioned solely by doubts as to the legal character of the instrument is not, as a matter of law, excusable. The probate courts are the proper tribunals for the settlement of such questions. The proponent testified in substance that she knew of the existence of this instrument and read it immediately after the death of her mother-in-law; that she and H. C. House were then living together as husband and wife, and continued to live together for nearly 4 years thereafter. Her attorney, Capt. Baker, whom she consulted at the time the divorce was granted, told her the instrument was not a will. He did not see the instrument, but she repeated to him what she remembered as its contents, gathered by reading it upon the occasion above referred to. Capt. Baker then advised her that the instrument was not a will. She further stated that she afterwards discussed the instrument with many of her friends, some of whom were lawyers. In 1914 she called Mr. H. C. House over the phone and asked him if he was going to probate his mother's will. She told Mr. House then that she considered that the will should be probated; that she had never received her portion of the property,

and gave him an opportunity. He replied that he did not intend to probate the instrument. She then told Mr. House that she was going to get a lawyer, and thereafter, in 1917, she consulted Mr. Abrahams, of California, who afterwards filed her application to probate the instrument.

There is nothing in the evidence tending to prove that she and her lawyer could not have inspected the document at any time they sought permission to do so. The court could not fairly assume that Mr. House would have refused to exhibit the instrument to them, had they requested the privilege of inspection. The testimony of the proponent clearly indicated that in 1914, if not before that time, she had ceased to fully rely upon the judgment of Capt. Baker, who had advised that the instrument was not a will subject to probate; yet, without any reason being shown, she thereafter waited for approximately 3 years before taking any steps to seek legal assistance in having the instrument offered for probate. While there is no specific command in our law that wills shall be probated within any given length of time, it is manifestly a part of the public policy of this state that this shall be done as early as practicable after the death of the testator. It seems reasonable to hold that, in order to escape the consequences of default, a degree of diligence above that usually adopted as a measure of ordinary prudence or care should be required of those having the privilege of probating testamentary instruments. The considerations which underlie the public policy increase the urgency of the performance of the duty which the law has coupled with the privilege of probating wills.

[6] The appellant, it is true, was a married woman for nearly 4 years after the death of Mrs. House, Sr.; but the law did not place any obstacle in the way of her filing an application for the probate of this instrument, if it be subject to probate. A married woman is not exempt from the limitation which requires such proceedings to be instituted within 4 years from the death of the testator. While her coverture probably might be looked to as a circumstance tending to excuse her delay, it did not exempt her from the limitation.

[7] We are of the opinion that the state of the evidence was such that the trial court had a right to conclude that she failed to exercise that degree of diligence which the law imposes upon those who have the right to probate testamentary instruments.

The judgment will be affirmed upon the grounds stated. We deem it unnecessary to discuss the other questions raised in the appeal.