**Opinion filed May 9, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00131-CV

_____

## IN THE MATTER OF THE ESTATE OF
## WILLARD O. ALLEN, DECEASED

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. 4949**

### O P I N I O N

This is an appeal of an order admitting a will to probate as a muniment of title. Appellant, Willard Miles Allen, objected to the probate of his father's will, alleging that his mother, Jo Ann Allen, was in default for failing to offer the will to probate within the four-year time period prescribed by TEX. PROB. CODE ANN. § 73(a) (West 2003). In a bench trial, the trial court found that Jo Ann Allen, Appellee, "was not in default in failing to present the [will] for probate within the four years." *Id.* The trial court admitted the will to probate.

In a single issue, Appellant contends that the evidence was insufficient to support the trial court's finding and conclusion that Appellee was not in default for

failing to present the will for probate during the four-year statutory period immediately following the testator's death. We note that Appellant does not challenge the trial court's other findings of fact. Appellant requests that we render judgment, not remand the case; therefore, Appellant's contention is that the evidence was legally insufficient to support the trial court's judgment. We affirm.

*Background Facts*

Appellee, Jo Ann Allen, married Willard O. Allen in 1949. They were married for fifty-six years prior to his death and had four children: Willard Miles Allen, Tom Henry Allen, William Russell Allen, and Melody Jo Allen. Willard O. Allen left a valid will dated April 22, 1976, naming Appellee as Independent Executrix and leaving Appellee all of his property, community or separate.

Within a month of her husband's death in 2005, Appellee met with a local attorney in Coleman County. Because there were no debts or liens, he advised her that she had the option of probating the will or executing an affidavit of heirship. As a result of their discussion, Appellee understood that the two options would lead to the same result, that she would inherit all of her husband's property under either option, and that filing the affidavit would be less expensive and could be done quickly. Appellee testified that they did not discuss whether her husband left community or separate property and that, at the time of the meeting, she did not know the law treated community and separate property differently. She remembered that the lawyer told her that she "could always probate [the will] later if she needed to." Appellee said she chose the affidavit because she just "wanted to get it done" so she could make a will to leave everything to her children. She knew that her husband and his brother had filed an affidavit of heirship with respect to their father's property and that she and her brother had filed one for their father's property. Appellee discussed her choice with her children; they did not object.

2

Appellee was eighty-one years old at the time of the hearing on her application to probate the will as a muniment of title. Appellee testified that she remembered being anxious to have the estate settled but that time and money were not factors; she just wanted the estate settled quickly so she could make a new will. The lawyer's secretary, Mary Knox, recalled that time was an issue for Appellee and that there was some conversation about the affidavit of heirship being less expensive than probate. Knox prepared the affidavit and said that she did not have any concerns about a conflict between the affidavit and the will.

At the time of his death, Willard O. Allen owned two tracts of land that were his separate property: a 65.14-acre tract and a 188-acre tract. In 2010, Appellee had a dispute with her son, Appellant, who was keeping livestock on the property. Appellee asked Appellant to remove his livestock to allow her to lease the property. He refused. Appellee then consulted another Coleman attorney who advised her that there was a problem with the affidavit of heirship. TEX. PROB. CODE ANN. § 38(b) (West 2003), dealing with the intestate succession of property other that community property, provides that, in situations where there are surviving children, the surviving wife is entitled to a life estate in one-third of the land of the intestate, with remainder to the child or children. Within a month of receiving this advice, Appellee, on April 8, 2010, filed her husband's Last Will and Testament for probate in Coleman County. Her husband died on August 9, 2005.

Appellant was the only child who contested the application to probate the will. His opposition was based on the four-year limitation period for filing a will for probate. PROB. § 73. He contended that his mother was in default for failing to file the will within the period. The other three children filed affidavits stating that they did not object to Appellee filing the will for probate more than four years after their father's death.

3

The affidavit of heirship referred to the two tracts of land, but did not describe the property as community or separate. The affidavit recited that Willard Orville Allen "died leaving a written will" and attached a copy of the will to the affidavit.

Appellee's attorney acknowledged at trial that decedent's separate property would pass differently under the descent and distribution laws of Texas than under the will that left all property to his wife. He admitted that, if he had known the two tracts were separate property, he would have probated the will. Appellee testified that she had no legal training or background, that she trusted her lawyer to give her good advice, that she understood that she inherited all her husband's property whether the will was probated or an affidavit of heirship was filed, and that she could file the will for probate later if necessary. Appellee testified that it was important to her to inherit the property because it was a savings account that she might need.

Appellant testified that his mother told him that she wanted to file an affidavit of heirship because she and her brother had done that for their father's property, her husband and his brother had done the same for their father's property, and the affidavit would cost less money than probating the will. Appellant told his mother that was alright with him. His mother expressed to him that getting everything done quickly was a concern. Appellant testified that he did not think that Appellee was concerned about whether some of the property went to her and some to the children because she told him that the property was going to the four children.

At the end of the bench trial, the trial court ruled that Appellee was not in default for failing to offer the will for probate within the four-year period. The trial court filed findings of fact and conclusions of law that included the following findings: that Jo Ann Allen had sought the advice of an attorney concerning the

4

estate of Willard O. Allen; that the attorney drafted the affidavit of heirship that did not state whether the property was separate or community but referred to and attached a copy of the will; that Jo Ann Allen relied on the legal advice of the attorney and erroneously believed that the affidavit of heirship was sufficient to transfer all property of the decedent to her; that, once her son claimed ownership in the real property, Jo Ann Allen "timely sought advice from another attorney as to the ownership" and was advised that the will should have been probated; and that, once advised of the need for probate, she was diligent in offering the will for probate. The trial court concluded that Appellee was not in default for failing to offer the will for probate as a muniment of title within four years of her husband's death.

*Standard of Review*

We review sufficiency challenges to a trial court's findings of fact under the same standards that we use to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810.

*Analysis*

Section 73(a) of the Texas Probate Code provides, in relevant part, as follows:

> No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid.

As used in Section 73(a), "default" means the "failure to probate a will because of the absence of reasonable diligence on the part of the party offering the instrument." *In re Estate of Perez*, 324 S.W.3d 257, 262 (Tex. App.—El Paso 2010, no pet.); *In re Estate of Cornes*, 175 S.W.3d 491, 495 (Tex. App.—Beaumont 2005, no pet.); *Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex. App.—Dallas 2003, pet. den'd); *Chovanec v. Chovanec*, 881 S.W.2d 135, 137 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Kamoos v. Woodward*, 570 S.W.2d 6, 8–9 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.).

Whether the proponent of a will is in default is normally a fact issue. *Chovanec*, 881 S.W.2d at 137; *Kamoos*, 570 S.W.2d at 8; *Owen v. Felty*, 227 S.W.2d 379 (Tex. Civ. App.—Eastland 1950, writ ref'd). The case law in Texas is quite liberal in permitting a will to be offered as a muniment of title after the statute of limitations has expired upon the showing of an excuse by the proponent for the failure to offer the will earlier. *Poppe v. Poppe*, No. 01-08-00021-CV, 2009 WL 566490 (Tex. App.—Houston [1st Dist.] Mar. 5, 2009, no pet.); *Chovanec*, 881 S.W.2d at 137; *Kamoos*, 570 S.W.2d at 8. As the court stated in the early case of *Armstrong v. Carter*, 291 S.W. 626, 627 (Tex. Civ. App.—Waco 1927, no writ):

> Clearly, the intention of the Legislature was to lodge with the trial court or jury the power to determine as a question of fact, where there is any evidence raising the issue, whether there was a default. The

6

tendency of our courts has been from its earliest decisions to permit wills to be filed after the four-year period, where there is any evidence of a probative force which would excuse the failure to offer the will sooner. Long v. Todd (Tex. Civ. App.) 252 S.W. 327; Michaelis v. Nance (Tex. Civ. App.) 184 S.W. 785 (writ refused); House v. House (Tex. Civ. App.) 222 S.W. 322; Ochoa v. Miller, 59 Tex. 460; Ryan v. T. & P. Ry. Co., 64 Tex. 239.

The court in *Chovanec*, reversing a summary judgment, held that the evidence raised a genuine issue of material fact as to whether the decedent's husband was in default for failing to timely offer her will for probate within four years of her death; he offered the will for probate thirteen years after her death. The court reasoned that the summary judgment evidence showed that the husband was not aware that it was necessary to probate the will, that he did not believe probate was necessary because he inherited everything from his wife, that he believed the land was his separate property, and that he was unaware of any title problems during a period when three successive mineral leases had been executed on the land. *Chovanec*, 881 S.W.2d 135.

In *Kamoos*, the court affirmed the judgment of the trial court that found the testator's wife was not in default for failing to timely offer the will for probate. The wife had limited financial resources and did not believe it was necessary to offer the will for probate due to the nature of the property; she thought the estate consisted entirely of community property. When she became aware that her husband had inherited a royalty interest, she filed an application to probate the will within a few weeks of being contacted by an oil company. There was a lapse of approximately five years after her husband's death before the will was offered for probate. *Kamoos*, 570 S.W.2d at 8–9. *Kamoos* stands for the proposition that a proponent's belief that probate was unnecessary, coupled with a concern over the

cost of probate, can constitute legally and factually sufficient evidence to support admitting a will to probate after four years.

Similar to the facts in *Kamoos*, the court in *Perez* found that the wife's limited financial resources and belief that probate was unnecessary were legally sufficient to uphold the trial court's conclusion that the wife was not in default for failing to present the will for probate within four years after her husband's death. She testified that she did not know that there was a time limit in which to probate a will and that she thought her husband's lawyer had taken care of the matter regarding the will. *Perez*, 324 S.W.3d at 263.

There are a number of cases where the courts have found that evidence that a proponent relied on counsel's advice was sufficient to support a finding that the proponent was not in default or to raise a material fact question of whether the proponent was not in default. *See, e.g.*, *Perez*, 324 S.W.3d at 263 (wife found not in default); *Poppe*, 2009 WL 566490, at *5 (appellate court reversed summary judgment and remanded for trial); *Norrell v. Norrell*, No. 05-96-00441-CV, 1997 WL 657088, at *2 (Tex. App.—Dallas Oct. 23, 1997, no pet.) (not designated for publication) (appellate court reversed summary judgment and remanded for trial).

The wife in *Perez* took the will to an attorney who suggested that they file an affidavit of heirship instead of probate. The attorney prepared the affidavit of heirship and sent it to the eldest child with a special warranty deed for signature; however, the child did not respond. The court of appeals affirmed the trial court's decision to admit the will stating, "Like the will proponent in *Kamoos*, Mrs. Perez believed it was unnecessary to probate the will; she did not know there was a time limit to probate a will. . . . She also believed [her attorney] had taken care of the matter regarding the will." *Perez*, 324 S.W.3d at 263.

Citing and discussing *Chovanec*, the court in *Poppe* pointed out that the proponent stated that she was not aware of the necessity to probate the wills

8

because a letter from her counsel showed that she thought she could handle the estates without the necessity of probate. *Poppe*, 2009 WL 566490, at \*5. In *Norrell*, the proponent, within a few months of her husband's death, met with an attorney to discuss probating her husband's will. She paid the attorney a retainer and believed he would take care of the matter. Although the attorney drafted an application for probate, the will was never probated. The attorney testified that his client refused to pay him and that he mailed the file back to her. Seven years later, she attempted to probate the will as a muniment of title.

The *Norrell* court cited *Chovanec* and *Kamoos* for two propositions: (1) Texas case law leans heavily in favor of allowing a will to be offered as a muniment of title where the proponent offers a reasonable excuse for failing to probate the will during the statutory period and (2) the proponent's belief that probate was unnecessary has been found sufficient. The *Norrell* court reversed the summary judgment in favor of the opponent to probate, reasoning as follows:

> A belief that probate has been accomplished is certainly as reasonable an excuse for inaction as a belief that probate is unnecessary. Although it may have been naive for appellant to believe the will had been probated without hearing anything definitive from her attorney, as the cases cited above demonstrate, lack of knowledge regarding the probate process does not amount to an absence of reasonable diligence as a matter of law.

*Norrell*, 1997 WL 657088, at \*2.

The trial court, as factfinder, found that Appellee relied on the advice of the first Coleman attorney, believed that the affidavit of heirship transferred all property to her the same as the will did, and believed that probate proceedings were unnecessary. Like the proponents in *Perez* and *Norrell*, she believed that everything that needed to be done had been done. Like the proponent in *Perez*, she did not know there was a time limit for offering a will to probate; she testified that

9

the attorney told her they could probate the will later if necessary. Supporting her beliefs was the fact that the affidavit of heirship recited that Willard O. Allen left a will, and a copy of the will was attached to the affidavit.[1] Appellee was seventy-five years old when her husband died in 2005; she had no education or background in legal matters. Her attorney and his secretary, Knox, testified that Appellee wanted the estate settled "as quickly as possible" and inexpensively. Appellee said that she wanted it done quickly so that her attorney could draft a new will for her. Upon learning of the problem with the affidavit of heirship, Appellee acted promptly in filing an application to probate the will; the application was filed four years and eight months after her husband's death. The evidence was legally sufficient to sustain the trial court's conclusion that Appellee was not in default in not probating the will.

Because the issue of whether a proponent is in default is a question of fact rather than a question of law, the cases must be analyzed in terms of their facts. Appellant cited cases where courts have stated that a family agreement, by itself, not to probate a will does not justify late admission to probate. But in each case, there were other facts. In *Brown v. Byrd*, 512 S.W.2d 753 (Tex. Civ. App.—Tyler 1974, no writ), the court placed considerable emphasis on the long lapse of time: the proponent was informed of the will's existence seventeen days after the expiration of the four-year period after the testator's death, yet she waited twenty-nine years before filing the will for probate. In *In re Estate of Rothrock*, 312 S.W.3d 271, 273, 275 (Tex. App.—Tyler 2010, no pet.), the court pointed out that the proponent of the will was, by his own admission, a successful attorney with half his practice dealing with oil and gas.

---

[1]At the outset of the hearing, the trial court asked if the affidavit of heirship stated that Willard O. Allen died without a will. Appellant's attorney replied, "No, it states that he died with a Will, and the Will is attached to the Affidavit of Heirship."

The facts in *Armendariz De Acosta v. Cadena*, 165 S.W. 555 (Tex. Civ. App.—El Paso 1914, writ ref'd), are very different from the case before this court. The principal holding in *Cadena* is that the document the decedent executed in Mexico could not be probated as a will in Texas because it violated the Texas statute that provided that a will "shall be in writing and signed by the testator, or by some other person by his direction and in his presence." 165 S.W. at 558. As "another reason" the document was not admitted to probate, the court pointed out that the proponent knew of the contents of the instrument within a month of the testator's death but that he and the beneficiaries entered a verbal agreement where he waived the provisions of the instrument in favor of a different division of the real property. *Id.* The proponent then made an application for letters of administration, and he managed the estate as administrator until the estate was closed. When the other beneficiaries (the wife and daughter) repudiated the verbal agreement, the proponent filed suit for his portion of the land under the alleged verbal agreement with them and under an alleged verbal partnership contract with the decedent. The trial court in that case instructed the jury to return a verdict for the wife and daughter on the ground that the contracts, even if made, were unenforceable because they were not in writing. *Id.* at 557.

Appellant also cites the early case of *House v. House*, 222 S.W. 322 (Tex. Civ. App.—Texarkana 1920, writ dism'd w.o.j.), for his contention that reliance on the advice of a lawyer is insufficient to support the trial court's holding below. But the *House* court specifically found that the proponent had not relied on the advice of counsel that the instrument was not a valid will; instead she sought advice from other lawyers on the same topic over the years. And she had only described the instrument to her initial counsel; she did not show him the document. Again, the facts in *House* were different from those in this case.

11

The evidence was legally sufficient to support the trial court's conclusion that the proponent was not in default.  Although not challenged, we further find that the facts were also factually sufficient.  Appellant's issue is overruled.

*This Court's Ruling*

We affirm the order of the trial court.


TERRY McCALL

JUSTICE


May 9, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.