**Shirley RANOLLS, Individually and as Representative of the Estate of April Dawn Ranolls, and Rhonda Renee Hogan, Plaintiffs,**

v.

**Adam DEWLING, et al., Defendants.**[1]

**CIVIL ACTION NO. 1:15–CV–111**

United States District Court,
E.D. Texas.

Signed September 22, 2016

---

1. Defendants Tankstar USA, Inc., and Bulk Logistics, Inc., have been dismissed as defendants in this case. *See* Docket No. 70.

Steve Waldman, Terry Bryant PLLC, Houston, TX, Hector Sandoval, Sandoval & Waldman PLLC, Houston, TX, for Rhonda Hogan.

Mitchell A. Toups, Weller Green Toups & Terrell LLP, Beaumont, TX, Gregory Karl Evans, Law Offices of Gregory K. Evans, PLLC, Houston, TX, for Plaintiff.

Raphael Charles Taylor, Johnson, Trent, West & Taylor, LLP, Peter A. Querubin, Daw & Ray LLP, Houston, TX, Michael Barrett Jones, Canterbury, Gooch, Surratt, Shapiro, Stein & Gaswirth, PC, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

MARCIA A. CRONE, UNITED
STATES DISTRICT JUDGE

Pending before the court are Defendants Adam Dewling and Rogers Cartage Co.'s (collectively, "Defendants") Motion for Partial Summary Judgment (# 30) and Defendants' Supplement (# 45) to the motion.[2] Having reviewed the pending motion and its supplement, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment should be denied.

## I. Background

This lawsuit stems from an automobile accident between Adam Dewling ("Dewling") and April Dawn Ranolls ("Ranolls") on Monday, March 9, 2015, at approximately 6:00 a.m. in Orange, Texas. Ranolls was driving a 2014 Chevrolet Silverado, and Dewling was driving a freightliner tractor with an attached tanker/trailer. The accident occurred while Ranolls was traveling southbound on Highway 62. As Dewling was entering the roadway from the Pilot truck stop heading north, Ranolls's vehicle struck the tanker before it cleared the southbound lane of travel. Ranolls died instantly as a result of the collision.

At the time of her death, Ranolls was not formally married but had previously lived with her same-sex partner, Intervenor-Plaintiff Rhonda Renee Hogan ("Hogan"), for approximately eighteen years. Neither Ranolls nor Hogan had a formal or informal marriage legally recognized either in Texas or any other state. Defendants contend that Ranolls and Hogan ceased living together almost a year before Ranolls's death. According to Defendants,

the women "had participated in a same-sex couple's equivalent of a divorce; they had partitioned the property they had purchased together and were living separate lives."

Following Ranolls's death, her mother, Plaintiff Shirley Ranolls, individually and as representative of her daughter's estate, filed suit in the 137th Judicial District Court of Jefferson County, Texas, alleging claims for wrongful death, survival, negligence, and gross negligence pursuant to Texas's wrongful death and survival statutes, TEX. CIV. PRAC. & REM. CODE § 71.001 et seq. ("Chapter 71"). The case was removed to federal court on March 13, 2015.

Hogan later intervened in the lawsuit, maintaining that, as Ranolls's surviving common-law spouse, she has standing to sue and recover damages pursuant to Chapter 71 and based upon her status as heir to Ranolls's estate. See Docket No. 52 (Second Amended Petition in Intervention). Shirley Ranolls subsequently settled her claims against Defendants and is no longer a party to this litigation. See Docket Nos. 67 and 68.

During the pendency of this lawsuit, the United States Supreme Court decided Obergefell v. Hodges, declaring that the right to marry is a fundamental right inherent in the liberty of a person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, same-sex couples may not be deprived of that right or liberty. —— U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). In the instant motion, Defendants assert: (1) the Obergefell decision is not retroactive and, therefore, cannot be applied to create a marriage where none previously existed; (2) Hogan is unable to

---

2. Defendant Pilot Travel Centers, LLC d/b/a Pilot Flying ("Pilot"), joins in Defendants' motion. See Docket No. 71.

meet the criteria to establish a common-law marriage; and (3) Hogan and Ranolls ended their relationship prior to Ranolls's death. Hogan responds that the *Obergefell* decision, which is grounded on the Constitutional doctrines of due process and equal protection, is retroactive. Additionally, Hogan proffers affidavits from several individuals in support of her assertion that she was the common-law spouse of Ranolls at the time of the accident.

## II. Analysis

### A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *accord Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014), *cert. denied*, —— U.S. ——, 135 S.Ct. 2804, 192 L.Ed.2d 847 (2015); *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 1715, 194 L.Ed.2d 811 (2016); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *accord*

*Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Hudspeth v. City of Shreveport*, 270 Fed.Appx. 332, 334 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3, 106 S.Ct. 2548; *see Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (quoting FED. R. CIV. P. 56(e)); *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The court must "review the record 'taken as a whole.'" *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))); *see City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Tiblier*, 743 F.3d at 1007; *see Hefren*, 820 F.3d at 771. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reason-

able doubts resolved in her favor. *Tolan v. Cotton*, —— U.S. ——, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 895 (2014) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Hemphill*, 805 F.3d at 538; *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). Moreover, summary judgment "generally is inappropriate when inferences parties seek to draw deal with questions of motive and intent." *Williams v. Upjohn Co.*, 153 F.R.D. 110, 116 (S.D. Tex. 1994); *see United States ex rel. Taylor–Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008) (stating that "we hesitate to grant summary judgment when a case turns on a state of mind determination"); *Pasco v. Knoblauch*, 223 Fed.Appx. 319, 322 (5th Cir. 2007) ("[S]ummary judgment is rarely proper when an issue of intent is involved.").

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner–Lambert Co.*, 581 F.Supp.2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468–69, 112 S.Ct. 2072); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F.Supp.2d 582, 584–85 (S.D. Miss.), *aff'd*, 293 Fed.Appx. 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill*, 805 F.3d at 538 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *see*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). In such a situation, " '[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.), *cert. denied*, 555 U.S. 1012, 129 S.Ct. 570, 172 L.Ed.2d 430 (2008) (quoting *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548).

### B. Standing

▮ "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517–18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Standing to sue means that "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *accord*

*Save Our Cmty. v. United States EPA*, 971 F.2d 1155, 1160 (5th Cir. 1992). "In determining standing, the court must undertake a 'careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*, 563 F.Supp.2d 659, 664 (E.D. Tex. 2007) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197; *accord Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012); *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008).

Section 71.004 of the Texas Civil Practice and Remedies Code specifies who may bring an action for damages under Chapter 71:

(a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.

(b) The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

(c) If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.

TEX. CIV. PRAC. & REM. CODE § 71.004.

■ As set forth above, Hogan intervened in this lawsuit, claiming that she has standing to sue as a "surviving spouse" pursuant to Chapter 71 on the basis of her alleged informal or common-law marriage to Ranolls. Section 2.401 of the Texas Family Code, under Subchapter E, "Marriage without Formalities," "Proof of Informal Marriage," provides:

(a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been signed as provided by this subchapter; or

(2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

TEX. FAM. CODE § 2.401.

Hogan invokes the Supreme Court's decision in *Obergefell*, issued on June 26, 2015, which granted same-sex couples the right to marry and to have lawful same-sex marriages recognized. —— U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609. In *Obergefell*, fourteen same-sex couples and two men whose same-sex partners were deceased ("Petitioners") claimed that various state officials ("Respondents") violated the Fourteenth Amendment by denying them the right to marry or to have their marriages, lawfully performed in another State, given full recognition.[3] 135 S.Ct. at 2593. The Court held:

> [T]he right to marry is a fundamental right inherent in the liberty of the per-

---

**3.** These cases came from Michigan, Kentucky, Ohio, and Tennessee, all states that, like Tex-

as, defined marriage as a union between one man and one woman. 135 S.Ct. at 2593.

son, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty. The Court now holds that same-sex couples may exercise the fundamental right to marry. No longer may this liberty be denied to them. *Baker v. Nelson* must be and now is overruled, and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.

135 S.Ct. at 2604–05 (overruling *Baker v. Nelson*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972)).

Defendants counter that because the facts underlying this case precede *Obergefell*, the case cannot retroactively apply to endow Hogan with surviving-spouse status based on Texas's informal marriage statute.

■ Generally, in both civil and criminal cases, unconstitutional laws and rules are void *ab initio*, or void from inception, as if they never existed. *See Montgomery v. Louisiana*, —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016); *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002) (citing *Reyes v. State*, 753 S.W.2d 382, 383–84 (Tex. Crim. App. 1988)); *Geft Outdoor LLC v. Consol. City of Indianapolis*, 187 187 F.Supp.3d 1002, 1012–13 (S.D. Ind. 2016); *see also* 19 AM. JUR. 2D, *Constitutional Law* § 195. Over the years, the Supreme Court has issued a series of decisions addressing retroactivity and its limitations. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995); *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *James B. Beam Distilling Co. v. Georgia* ("*Beam*"), 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Am. Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Chevron Oil Co. v. Huson* ("*Chevron Oil*"), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

In *Chevron Oil*, Gaines Ted Huson ("Huson") was injured while working on a drilling rig located on the Outer Continental Shelf. 404 U.S. at 98, 92 S.Ct. 349. Because Huson did not discover the severity of his injuries until many months later, he did not immediately file a personal injury suit to recover damages from the drilling company. *Id.* While the case was pending, the Supreme Court issued a decision in *Rodrigue v. Aetna Casualty & Surety Company*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), which held that state law rather than admiralty law applied to structures on the Outer Continental Shelf. *Id.* at 99, 92 S.Ct. 349. Relying on *Rodrigue*, the district court applied Louisiana's one-year statute of limitations and dismissed Huson's case as untimely. *Id.*

Huson argued on appeal and before the Supreme Court that, in view of pre-*Rodrigue* jurisprudence making admiralty law (including the laches doctrine) applicable, it would be unfair to give *Rodrigue* retroactive effect. *Id.* at 99, 92 S.Ct. 349. The Supreme Court agreed, concluding that "*Rodrigue* should not be invoked to require application of the Louisiana time limitation retroactively to this case." *Id.* at 100, 92 S.Ct. 349.

In its decision, the Supreme Court espoused a three-part test to determine whether a law should be applied only prospectively rather than retroactively:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have

relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application ....

*Id.* at 106–07, 92 S.Ct. 349 (citations omitted).

In later cases, however, the Supreme Court retreated from its position in *Chevron Oil.* For example, in the *Beam* case, a Delaware corporation and Kentucky bourbon manufacturer ("Beam"), claimed that Georgia's excise tax statute violated the Commerce Clause and sought a refund for the differential taxation as well as the full amount it had paid for several previous years. 501 U.S. at 533, 111 S.Ct. 2439. The company premised its argument on a Supreme Court decision from the prior year, *Bacchus Imports, Ltd. v. Dias ("Bacchus")*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), wherein the Supreme Court struck down a similar Hawaii statute for violating the Commerce Clause. *Id.* When Georgia's Department of Revenue failed to respond to its request for a refund, the company filed suit against the State. *Id.* at 533, 111 S.Ct. 2439. The trial court agreed that the tax was unconstitutional based on *Bacchus*; however, using the three-part test set forth in *Chevron Oil,* it declined to apply the ruling retroactively. *Id.*

The Supreme Court reversed, holding that *Bacchus* applied retroactively to claims arising from facts antedating the decision. *Id.* at 532, 111 S.Ct. 2439. In the opinion, Justice Souter characterized retroactivity as a choice of law, explaining that it is "a choice ... between the princi-

ple of forward operation and that of relation backward." *Id.* at 534–35, 111 S.Ct. 2439. In a thorough discussion of retroactivity in civil cases, he described three manners in which such a choice of law problem may be resolved:

First, a decision may be made fully retroactive, applying both to the parties before the court and to all others.... This practice is overwhelmingly the norm, ... and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it ....

Second, there is the purely prospective method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision. The case is decided under the old law but becomes a vehicle for announcing the new, effective with respect to all conduct occurring after the date of that decision. This Court has, albeit infrequently, resorted to pure prospectivity ..., although in so doing it has never been required to distinguish the remedial from the choice-of-law aspect of its decision. This approach claims justification in its appreciation that "[t]he past cannot always be erased by a new judicial declaration," ... and that to apply the new rule to parties who relied on the old would offend basic notions of justice and fairness. But this equitable method has its own drawback: it tends to relax the force of precedent, by minimizing the costs of overruling, and thereby allows the courts to act with a freedom comparable to that of legislatures.

Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement. This method, which we may call modified, or selective, prospectivity, enjoyed its temporary ascendancy in the criminal law during a period in which the Court formulated new rules, prophylactic or otherwise, to insure protection of the rights of the accused. On the one hand, full retroactive application of holdings such as those announced in [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ], would have "seriously disrupt[ed] the administration of our criminal laws[,] ... requir[ing] the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards." On the other hand, retroactive application could hardly have been denied the litigant in the law-changing decision itself. A criminal defendant usually seeks one thing only on appeal, the reversal of his conviction; future application would provide little in the way of solace. In this context, without retroactivity at least to the first successful litigant, the incentive to seek review would be diluted if not lost altogether.

*Id.* at 535–37, 111 S.Ct. 2439 (citations omitted).

The Court went on to opine that the third option, selective prospectivity, "breaches the principle that litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally." *Id.* at 537, 111 S.Ct. 2439. The Court further acknowledged that it had "abandoned the possibility of selective prospectivity in the criminal context" in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and noted that "selective prospectivity appears never to have been endorsed in the civil context." *Id.*

In rejecting selective prospectivity in *Beam*, Justice Souter stated that *Bacchus* is "fairly read to hold ... that its rule should apply retroactively to the litigants then before the Court." *Id.* at 539, 111 S.Ct. 2439. Importantly, he noted that "[b]ecause the *Bacchus* opinion did not reserve the question whether its holding should be applied to the parties before it ..., it is properly understood to have followed the normal rule of retroactive application in civil cases." *Id.* Based on this reasoning, the Court concluded that when it "has applied a rule of law to the litigants in one case *it must do so with respect to all others not barred by procedural requirements or res judicata.*" *Id.* at 544, 111 S.Ct. 2439 (emphasis added).

The Court reinforced its preference for retroactivity in *Harper*, holding: "this Court's application of a rule of federal law to the parties before the Court *requires every court to give retroactive effect to that decision.*" 509 U.S. at 89, 113 S.Ct. 2510 (emphasis added). In reaching this conclusion, the Court stated that both "the common law and our own decisions" have "recognized a general rule of retrospective effect for the constitutional decisions of this Court" and noted that "[n]othing in the Constitution alters the fundamental rule of 'retrospective operation' that has governed '[j]udicial decisions ... for near a thousand years.'" *Id.* at 94, 113 S.Ct. 2510 (quoting *Robinson v. Neil*, 409 U.S. 505, 507, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting)). Interest-

ingly, the Court commented in both *Harper* and *Beam* that " 'the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case' and that the federal law applicable to a particular case does not turn on 'whether [litigants] actually relied on [an] old rule [or] how they would suffer from retroactive application' of a new one." *Harper*, 509 U.S. at 95 n.9, 113 S.Ct. 2510 (quoting *Beam*, 501 U.S. at 543, 111 S.Ct. 2439).

In light of the aforementioned authorities, the court finds that *Obergefell* applies retroactively. First, although the facts forming the basis of Hogan's claims antedate *Obergefell*, the decision was issued during the pendency of this lawsuit. *See Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir.) (citing *Harper*, 509 U.S. at 97, 113 S.Ct. 2510) (recognizing that "Supreme Court pronouncements must be given full retroactive effect in all cases open on direct review at the time of the Court's ruling"), *cert. denied*, —— U.S ——, 136 S. Ct. 534, 193 L.Ed.2d 427 (2015); *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008). Further, because the *Obergefell* opinion "did not reserve the question whether its holding should be applied to the parties before it" and, in fact, the ruling was applied to the litigants before the Court, under *Beam*, the court must follow "the normal rule of retroactive application in civil cases." 501 U.S. at 539, 111 S.Ct. 2439.

This result is consistent with treatment of *Obergefell* as retroactive by other federal courts. For example, a few months before *Obergefell* was issued, Judge Orlando Garcia granted a preliminary injunction enjoining the State of Texas from enforcing the State's ban on same-sex marriage. *See De Leon v. Perry*, 975 F.Supp.2d 632,

639–40 (W.D. Tex. 2014), *aff'd*, 791 F.3d 619 (5th Cir. 2015). On appeal, the Fifth Circuit agreed with Judge Garcia's ruling, stating in an opinion dated July 1, 2015, that "*Obergefell* ... is the law of the land and, consequently, the law of this circuit and should not be taken lightly by actors within the jurisdiction of the court." *De Leon*, 791 F.3d at 624.

On April 20, 2016, the Eleventh Circuit dismissed as moot an appeal of a district court's holding that an Alabama man, Paul Hard ("Hard"), who had married his same-sex partner in Massachusetts, was entitled to wrongful death benefits. *Hard v. Attorney Gen.*, 648 Fed.Appx. 853, 853–56 (11th Cir. 2016). The court found that Hard was a "surviving spouse" under Alabama law even though his partner died prior to *Obergefell* and at a time when Alabama did not recognize same-sex marriages. *Id.* Relatedly, when ruling on the retroactivity of *United States v. Windsor*,[4] a Northern District of California judge acknowledged the *Obergefell* decision and found that the plaintiff and her partner (a deceased employee of FedEx) had been married at the time of the employee's death, even though they married before same-sex marriage was legal in California. *Schuett v. FedEx Corp.*, 119 F.Supp.3d 1155, 1165 & n.5 (N.D. Cal. 2016).

Numerous state courts and agencies, including those in Texas, have applied *Obergefell* retroactively. For instance, in the fall of 2015, a County Clerk in Tarrant County, Texas, refused to register a "Declaration of Informal Marriage" between two men claiming they had been in a common-law marriage for twenty-three years. After being contacted by the couple's attorney, the Tarrant County Clerk issued a statement, clarifying that her office would

---

**4.** In *Windsor*, the Supreme Court declared § 3 of the Defense of Marriage Act, 1 U.S.C. § 7, unconstitutional. —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013).

accept common-law affidavits dated prior to June 26, 2015, the date of the *Obergefell* decision:

> Today, my office reached out to [the Department of State Health Services] to reconfirm their position on the above. However, they indicated there had been a miscommunication regarding the issue; and that applicants, regardless of gender, may apply for an informal marriage license using any date applicable to their relationship.
>
> Additionally, we sought an opinion from the Tarrant County Criminal District Attorney on this same issue. They agree with the position of the Department of State Health Services.

*See* Tammy E. Nash, *Update: Tarrant County Clerk Says Her Office Will Accept Common-Law Marriage Affidavit*, DALLAS-VOICE.COM (Sept. 25, 2015), http://www.dallasvoice.com/update-tarrant-countyclerk-office-accept-common-law-marriage-affidavit-10205158.html.

On February 19, 2015, a same-sex couple were married in Travis County, Texas. *In re State*, 489 S.W.3d 454, 457 (Tex. 2016) (Brown, J., concurring). The Travis County Clerk waived the 72–hour waiting period and issued a marriage license to Suzanne Bryant and Sarah Goodfriend after they filed a request for a temporary restraining order, preliminary injunction, and permanent injunction to declare Article 1, Section 32 of the Texas Constitution and § 2.001, § 2.012, and § 6.204 of the Texas Family Code unconstitutional. *Id.* Without providing notice to the Texas Attorney General, a Travis County judge granted their request and declared the Texas ban on same-sex marriage unconstitutional. *Id.* at 457. After the couple married, the Texas Attorney General sought a writ of mandamus with the Supreme Court of Texas challenging the validity of the trial court's order in light of its failure to provide notice to the Attorney General before holding the same-sex marriage ban unconstitutional. *Id.* at 457. On April 15, 2016—after *Obergefell* was issued—the Supreme Court of Texas dismissed the Attorney General's mandamus petition as moot. *Id.* at 455, 457. In the concurring opinion, Justices Willet and Devine specifically acknowledge that the *Obergefell* decision rendered the Attorney General's mandamus petition moot. *Id.* at 458 ("In light of *Obergefell*, I cannot dispute this disposition."). Thus, although the Court did not hold so explicitly, it applied *Obergefell* retroactively to validate the February 2015 marriage.[5]

In another Texas case, individual taxpayers sued the mayor of Houston and the City of Houston to enjoin the payment of employee benefits to same-sex spouses of employees legally married outside of Texas. *Parker v. Pidgeon*, 477 S.W.3d 353, 354 (Tex. App.–Houston [14th Dist.] 2015, no pet.). The plaintiffs invoked the provisions of the Texas Constitution and the Texas Family Code that made same-sex marriages invalid. *Id.* The trial court granted a temporary injunction prohibiting the City "from furnishing benefits to persons who

---

**5.** Notably, two days prior to the filing of the Bryant/Goodfriend case (and prior to the *Obergefell* decision), Judge Guy Herman, a probate judge in Travis County, Texas, found Article 1, Section 32 of the Texas Constitution and § 2.401 and § 6.204 of the Texas Family Code unconstitutional "because such restrictions and prohibitions violate the Due Process and Equal Protection Clauses of the United States Constitution." *See In Re Powell*, No. C–1–PB–14–001695 (Probate Court No. 1, Travis County, Texas). Judge Herman treated the Texas same-sex marriage ban as *void ab initio*, as if it never existed, and found that Sonemaly Phrasavath, the common-law, surviving, same-sex spouse, was decedent Stella Marie Powell's heir. *See In Re Powell*, No. C–1–PB–14–001695 (Interlocutory Judgment Declaring Heirs, Oct. 5, 2015).

are married in other jurisdictions to City employees of the same sex." *Id.* The City appealed and, while the case was pending, the Supreme Court decided *Obergefell. Id.* Based on the Supreme Court's decision, as well as the Fifth Circuit's ruling in *De Leon,* the Court of Appeals reversed the trial court's injunction. *Id.*

Likewise, a Pennsylvania state court has applied *Obergefell* retroactively. The Pennsylvania state judge found that a decedent and her surviving spouse had been married since September 2, 2001, until the time of decedent's death on November 20, 2013, pursuant to Pennsylvania common law. *See In Re Estate of Kimberly M. Underwood,* No. 2014–E0681–29 (Bucks County Court of Common Pleas, July 29, 2015); *see also* Matt Fair, *Judge Retroactively Recognizes Common-Law Gay Marriage,* LAW360, *http://www.law360.com/articles/6849 70/print?section=employment.* Consequently, the surviving spouse was able to obtain all rights and privileges of validly licensed, married spouses under the laws of the Commonwealth of Pennsylvania. *Id.*

In short, the binding and persuasive authorities outlined above compel the conclusion that *Obergefell* applies retroactively to this matter. Moreover, given the Supreme Court's holding that the Constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex," a contrary result (*i.e.,* one in which Hogan is prevented, as a matter of law, from asserting a wrongful death claim as an alleged

common-law spouse) would violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Accordingly, summary judgment in favor of Defendants on this issue is improper.

## C. Texas Family Code § 2.401—Informal Marriage

■ Defendants alternatively argue that Hogan cannot demonstrate that she and Ranolls were informally married under Texas law. As outlined in Section II.B., Texas law provides that to establish the existence of a common-law marriage, one must proffer evidence that the couple "agreed to be married and after the agreement they lived together in this state" and "represented to others that they were married." TEX. FAM. CODE § 2.401(a)(2).[6] In her responsive brief, Hogan attaches numerous affidavits, including her own, stating that she and Ranolls lived together for many years (since 1996); agreed to be married; wore wedding bands to symbolize their marriage; raised a son, Tanner, together; and presented themselves as spouses at work events, family gatherings, parties, dinners, and sporting and other events. Additionally, Hogan maintains that they "presented each other as a married couple in every way possible as [they] lived [their] daily lives," and they "introduced each other as . . . spouse and Tanner as [their] son." Hogan adds that "April was also listed on the paperwork at Tanner's school as Tanner's parent." According to Hogan, she and Ranolls "had some marital problems toward the end of [Ranolls's]

---

**6.** Section 2.401(b) states "If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the *second anniversary* of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married." TEX. FAM. CODE § 2.401(b) (emphasis added). In this case, it is unclear precisely

when Hogan and Ranolls ceased living together. Defendants approximate that this took place one year before Ranolls's death, which occurred on March 9, 2015. In any event, § 2.401(b)'s rebuttable presumption does not appear to apply, as Hogan filed a petition in intervention on June 3, 2015, less than two years after the couple's alleged separation.

life," but they "were resolving those problems," and "healing [their] marriage, just as many other couples do." In support of this proposition, she points to the affidavit of Ranolls's niece, who states that the couple spent the night together in November 2014 and attended a family Christmas together in December 2014, only three months before Ranolls's death.

Despite this evidence, Defendants insist that because Hogan and Ranolls ceased living together a year before Ranolls's death and allegedly permanently ended their relationship approximately six months before the incident, they participated in a "same-sex couple's equivalent of a divorce." Defendants point to a string of text messages purportedly between Hogan and Ranolls, wherein Hogan makes a number of statements disavowing the relationship a matter of months before Ranolls's death, including: "[i]t's either a marriage or not a marriage. Black/white ... not gray. We are not married." The parties argue about the admissibility of the text messages; however, regardless of whether the messages are considered, there are, at a minimum, genuine issues of material fact as to the couple's marital status under Texas law, making summary judgment inappropriate. *See In re Farjardo*, No. 14–15–00653, 2016 WL 4206009, at *3–4 (Tex. App.–Houston [14th Dist.] Aug. 9, 2016, no pet.) (finding that the trial court erred in dismissing a divorce case based on lack of standing where there were conflicting facts on all three elements of common-law marriage).[7]

 The Supreme Court of Texas has stated that "[t]he law recognizes a common-law marriage, but a common-law divorce is unknown to Texas law." *Claveria's*

*Estate v. Claveria*, 615 S.W.2d 164, 167 (Tex. 1981); *Garcia v. Garcia*, No. 02–11–00276–CV, 2012 WL 3115763, at *5 (Tex. App.–Fort Worth Aug. 2, 2012, no pet.); *accord Stuberg v. Colvin*, No. 3:15–CV–3505, 2016 WL 3745681, at *5 (N.D. Tex. July 13, 2016) (recognizing that "there is no such thing as a common-law divorce in Texas"). "The marriage arises out of the state of facts; but once the common-law status exists, it, like any other marriage, may be terminated *only* by death or a court decree." *Id.* (emphasis added). Notably, "[o]nce the marriage exists, the spouses' subsequent denials of the marriage, if disbelieved, do not undo the marriage." *Id.* Because no divorce decree exists due to the laws against same-sex marriage in place in Texas at the time, an informal marriage between Hogan and Ranolls could not have been dissolved until her death on March 9, 2015. For these reasons, summary judgment is not warranted.

### III. Conclusion

Consistent with the foregoing analysis, the court finds that the Supreme Court's decision in *Obergefell* applies retroactively to this case. Further, there exist genuine issues of material fact with respect to Hogan and Ranolls's marital status pursuant to Texas Family Code § 2.401. Accordingly, Defendants' motion for summary judgment and supplement thereto are DENIED.

---

7. Although text messages cannot destroy a marital relationship, assuming their admissibility, they could adversely affect the amount of damages, if any, Hogan might recover on

her wrongful death claim if she is found to have been in a common-law marriage with Ranolls.