COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF: | § | No. 08-20-00156-CV |
| ROBERT SCOTT MASTERS, | § | Appeal from the |
| | § | County Court at Law No. 2 |
| Deceased. | § | of Tom Green County, Texas |
| | § | (TC# 19P151-L2) |

# **O P I N I O N**

Appellant Kippy Bailey applied to probate the holographic will of Robert Scott Masters six-years after Masters' death. In response, Masters' potential heirs, Laura Ann Masters, Laura Kit Martin, Steven Kimble Masters, and Walter Kit Masters (collectively, Appellees), filed a small-estate affidavit and an original answer, contending that the application to probate Masters' will should be denied because Bailey failed to file the application within four years of Masters' death. Following a hearing to probate the will as a muniment of title, the trial court denied Bailey's application to probate the will and approved Appellees' small-estate affidavit. Bailey now challenges both rulings. We affirm the trial court's order denying Bailey's application to probate Masters' will as a muniment of title and affirm the order approving Appellees' small-estate

affidavit.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before his death, Masters lived with Bailey as domestic partners at a house in San Angelo, Texas. Masters appeared on the deed as the sole owner of the house. He executed a holographic will in 2007 that bequeathed the house to Bailey. Masters died on December 13, 2012. Bailey discovered the will about a day after Masters' death and kept it in his sole possession until six years later, when he filed his application to probate the holographic will. According to Bailey, Masters never revoked the will, it was wholly in Masters' handwriting, and contained his signature. Aside from designating Bailey as the beneficiary of the house and other personal property, it also included specific gifts of personal property to other individuals, including Masters' mother, Appellee Laura Ann Masters. The will named Bailey as the executor, and following Masters' death, Bailey distributed the specific gifts to the individuals named in the will without attempting to probate the will.

Bailey continued to reside at the house, paid property taxes, performed maintenance, and paid utility bills in the years after Masters' death. Sometime in 2018, Bailey had the language "c/o Kippy Bailey" added to the tax records associated with the house, which still listed Masters as the sole owner. In late 2018, Bailey sought to have some work done on the house. When the contractor asked Bailey for a copy of the deed to the house, Bailey discovered that he did not have legal title to the house. Bailey contacted an attorney about a month later, and the attorney advised Bailey that he needed to admit the will to probate to transfer title to the house to his name.

On March 27, 2019—over six years after Masters' death—Bailey filed an application to

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

probate the holographic will as a muniment of title. In response, Appellees filed an original answer and small-estate affidavit, asserting that they were beneficiaries under Texas intestacy law. They also contended that the will could not be admitted to probate because Bailey, the executor of the estate, was aware of the will's existence and had not filed the will within four years of Masters' death in compliance with the Texas Estates Code.[2]

The trial court conducted an evidentiary hearing on Bailey's application to probate the will. At the hearing, Bailey did not dispute that he failed to file the will for probate within four years as generally required by the Estates Code. Rather, the primary issue was whether he proved that he was not in "default" for not timely filing the will for probate—a required finding to late-file a will to probate. The "default" inquiry asks whether Bailey could show a valid excuse for failure to timely offer the will. Bailey explained that he did not attempt to file the will because he did not know that the will had to be admitted to probate, and that before speaking to his attorney, he was under the impression that title to the property transferred automatically through the will. Bailey agreed that he had not performed the duties of an executor because he thought he had done what the law required of him. Bailey also believed that he owned a fifty-percent interest in the house, with Masters owning the remaining interest.

At the hearing, Appellees introduced tax statements associated with the house that showed Masters as having sole title to the house in the years before and immediately following his death. After Bailey requested the tax district to update its records, the statements for 2018 and 2019 listed the House's owners as "Robert Scott Masters - Deceased" with the notation added: "C/O Kippy Bailey." Appellees' counsel also asked Bailey if he had owned any other real estate, which Bailey

---

[2] *See* TEX.EST.CODE ANN. § 256.003 (generally requiring a will to be presented for probate before fourth anniversary of testator's death).

denied. But Appellees' counsel then introduced several deed records that showed that Bailey had owned or transferred real property through written deeds.

Following the hearing, the trial court denied Bailey's application to file the will as a muniment of title and approved Appellees' small-estate affidavit. This appeal follows.

## II. ISSUES ON APPEAL

In two issues, Bailey argues that the trial court erred by: (1) denying his application to file the will as a muniment of title; and (2) approving Appellees' small-estate affidavit. Bailey primarily raises a legal sufficiency challenge in Issue One. His statement of Issue Two, however, contends that the evidence supporting the trial court's implied finding on "default is contrary to the great weight and preponderance of the evidence"—language appropriate for a factual sufficiency challenge. Appellees also characterize Bailey as raising both legal and factual sufficiency challenges. Thus, we group the sufficiency-of-the-evidence challenges under Issue One and address Bailey's other challenge to the small-state affidavit under Issue Two.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

Where, as here, findings of fact are neither filed nor requested following a bench trial, we imply that the trial court made all findings necessary to support its judgment, provided that: (1) the necessary findings are raised by the pleadings and supported by the evidence; and (2) the decision can be sustained by any reasonable theory consistent with the evidence and applicable law. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re Estate of Rothrock*, 312 S.W.3d 271, 273-74 (Tex.App.--Tyler 2010, no pet.). The trial court's findings of fact, express or implied, are reviewable for legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a jury's answer. *Rothrock*, 312 S.W.3d at 273-74.

4

As we explain below, Bailey carried the burden to justify his failure to timely file the will for probate. When a party attacks the legal sufficiency of an adverse finding on an issue for which he has the burden of proof, that party "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* "If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* "The point of error should be sustained only if the contrary proposition is conclusively established." *Id.*

Legal sufficiency review must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. We remain mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819; *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 639 (Tex.App.--Austin 2012, no pet.). Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *City of Keller*, 168 S.W.3d at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* at 822.

The ultimate test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact finder] to reach the [result] under review." *Id.* at 827. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute

5

our judgment for that of the trier of fact. *Id.* at 822.

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, that party must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Burbach v. Stearns*, No. 03-20-00399-CV, 2022 WL 406390, at *7 (Tex.App.--Austin Feb. 10, 2022, no pet.) (mem. op). "We will set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered." *Stearns*, 2022 WL 406390, at *7, *citing Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). Under a factual-sufficiency review, the reviewing court must not substitute its judgment for that of the fact finder, who "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

**B. Controlling Law**

Section 256.003(a) of the Texas Estates Code generally requires that a will be submitted for probate within four years of the testator's death. TEX.EST.CODE ANN. § 256.003(a). Section 256.003(a) is underpinned by several public policy concerns: (1) the need to impose a reasonable limit on the time in which the property of a deceased testator should be distributed, after payment of debts; (2) to give all persons interested in the testator's estate an early opportunity to contest the will by living witnesses; and (3) to enforce the timely probate of wills. *Rothrock*, 312 S.W.3d at 274.

After expiration of the four-year period, however, a will may still be probated so long as the proponent is not in "default" for failing to timely probate the will. TEX.EST.CODE ANN.

6

§ 256.003(a). "As used in section 256.003(a), 'default' means failure to probate a will because of the absence of reasonable diligence by the party offering the instrument." *Ramirez v. Galvan*, No. 03-17-00101-CV, 2018 WL 454733, at *2 (Tex.App.--Austin Jan. 10, 2018, no pet.) (mem. op.), *citing In re Estate of Allen*, 407 S.W.3d 335, 339 (Tex.App.--Eastland 2013, no pet.). The party applying for probate has the burden to demonstrate that he was not in default. *In re Estate of Campbell*, 343 S.W.3d 899, 902 (Tex.App.--Amarillo 2011, no pet.), *disapproved on other grounds by Ferreira v. Butler*, 575 S.W.3d 331, 338 (Tex. 2019). Whether the party applying for probate is in default is usually a question of fact. *Id.* at 903.

Here, the will was filed as a muniment of title which is governed by Chapter 257 of the Probate Code. TEX.EST.CODE ANN. § 257.001 et seq. Section 257.054 similarly requires that a will be filed as a muniment of title within four years of the testator's death. *Id*. § 257.054(2). The parties treat the default exception to the four-year filing period as the same for both a will filed for probate and a will filed as a muniment of title.[3]

"A person having custody of a will is charged with knowledge that it must be filed for probate within the statutory period in order to rely on it, whether the necessity for doing so is apparent to him or not." *Marshall v. Est. of Freeman*, No. 03-20-00449-CV, 2022 WL 1273305, at *3 (Tex.App.--Austin Apr. 29, 2022, no pet. h.) (mem. op.). Ignorance of the law is no excuse for failure to comply with the statute. *Id.*, *citing Brown v. Byrd*, 512 S.W.2d 753, 757 (Tex.App.--Tyler 1974, no writ), *disapproved of on other grounds by Ferreira v. Butler*, 575 S.W.3d 331,

---

[3] The muniment of title provision in section 257.054 does not have an express exception for late filing a will as a muniment of title, as does section 256.003 for wills generally. That difference, however, may have been an unintended result from the 2009 codification of the Estates Code. *See Marshall v. Est. of Freeman*, No. 03-20-00449-CV, 2022 WL 1273305, at *2 n.4 (Tex.App.--Austin Apr. 29, 2022, no pet. h.) (noting how non-substantive codification of the Estates Code left the default exception for wills generally under section 256.003, but not for wills filed as a muniment of title under section 257.054). Whether the statute allows for an exception after four years for wills filed as a muniment of title has not been raised by the parties, and we assume, without deciding that the exception could apply.

338 n.55 (Tex. 2019) (disapproving of cases imputing one person's default to others). "A person who has custody of a will and refrains for the statutory period from presenting it for probate for personal considerations or under the assumption that his title to property is safe without it is in default." *Marshall*, 2022 WL 1273305, at *3, *citing Rothrock*, 312 S.W.3d at 274; *see also St. Mary's Orphan Asylum of Texas v. Masterson*, 122 S.W. 587, 591 (Tex.App.--San Antonio 1909, writ ref'd) ("By complying with the requirements of the statute, a person is afforded a way, and the only way, to foreclose all contingencies; choosing not to resort to it amounts to willful neglect.").

Texas case law, however, liberally permits a will to be offered as a muniment of title after the four-year limitation period has expired. *Ramirez*, 2018 WL 454733, at *2, *citing Allen,* 407 S.W.3d at 339, *and Chovanec v. Chovanec*, 881 S.W.2d 135, 137 (Tex.App.--Houston [1st Dist.] 1994, no writ). Some courts have found that a will proponent's belief that probate was unnecessary, when coupled with other circumstances, may be an adequate excuse to avoid a finding of default. *See, e.g*., *Allen,* 407 S.W.3d at 341 (holding that a proponent was not in default where she did not believe probate was necessary based on her attorney's erroneous advice); *Chovanec*, 881 S.W.2d at 137 (holding that a fact issue existed and summary judgment was improper where a will proponent argued that he was not in default because he "didn't know" he had to probate the will, believed the property to be his separate property, and had been paid royalties on mineral leases by third parties who never raised issue of proper title); *Kamoos v. Woodward*, 570 S.W.2d 6, 9 (Tex.App.--San Antonio 1978, writ ref'd n.r.e.) (holding that the will proponent was not in default where she had limited financial resources and did not believe that it was necessary to offer the will for probate due to nature of the decedent's estate); *Matter of Estate of Hammack*, No. 12-15-00246-CV, 2016 WL 1446083, at *3-4 (Tex.App.--Tyler Apr. 13, 2016,

no pet.) (mem. op.) (holding that a fact issue defeated summary judgment where a will proponent argued that he was not in default because he lacked the resources to probate the will and did not know that it needed to be probated).

Instructive here is the Austin court of appeal's decision in *Ramirez v. Galvan.* In that case the decedent and her husband resided together in a house they had purchased before the decedent's death. 2018 WL 454733, at *1. The decedent named her husband as the executor of her will and directed him to make specific gifts to various individuals. She left the rest of her property, including her interest in the house, to her husband. *Id*. The husband took possession of the will prior to his wife's death, and immediately began paying off his wife's outstanding debts and distributing his wife's personal items in accordance with her instructions. *Id*. Because his wife left the remainder of her estate to him, the husband did not think it was necessary to do anything further to transfer the house's title to himself. *Id*. The husband continued living in the house and paid off the house's mortgage with his separate funds. *Id*. When the husband tried to sell the house approximately six years after his wife's death, he discovered the necessity to probate the will to acquire clear title. He promptly contacted an attorney and filed an application to probate the wife's will as a muniment of title. *Id*. Without entering findings or conclusions, the trial court denied the husband's application to probate the will, thus impliedly finding that the husband was in default for failure to file the application within four years of the wife's death. *Id*. at *2.

On appeal, the husband argued that the evidence was legally and factually insufficient to establish his default. *Id*. at *2. The Austin Court of Appeals held that the evidence was legally sufficient to establish the husband's default, pointing to: (1) the husband's exclusive possession and control of the will for six years after the wife's death; and (2) his quasi-legal experience in completing prior immigration and divorce proceedings, and from his experiences in purchasing

the house with the decedent. *Id*. Nevertheless, the court found that the evidence was factually insufficient to establish the husband's default, reasoning that: (1) the husband began paying the wife's debts before her death and immediately began distributing her property according to her wishes after her death; (2) he believed that the intent of the will had been accomplished and that the way the wife had "willed her interest" was sufficient; (3) the husband continued to live in the house under the belief that he was the sole owner and no further action was necessary; and (4) the husband contacted an attorney and filed an application to probate the will as soon as he learned of the title issue with the house. *Id*. at *3. The court's recitation of the facts also included the observation that the husband had limited proficiency in the English language. *Id.* at *1. The court found that the delay in filing the application was not due to the husband's lack of diligence, but his lack of knowledge that any further act to transfer title was necessary, and that the trial court's implied finding of default was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. at *3.

## IV. ANALYSIS

### A. Legal Sufficiency

Relying on *Ramirez*, as recounted above, Bailey first argues that he proved "as a matter of law" that he was reasonably diligent in offering the will for probate. We construe this claim as a legal sufficiency challenge to the trial court's implied finding that he was in default for failing to timely attempt to probate the will. For much the same reason as explained in *Ramirez*, we reject the claim. 2018 WL 454733, at *2.

Bailey testified that he and Masters resided together in the house for several years before

Masters' death, but at no point were they legally married.[4]   Bailey, the executor of Masters' estate, learned about the will's existence right after Masters' death.   The specific gifts enumerated in Masters' will were distributed to their named beneficiaries through some means not clear from the record.   Under the impression that title to the house had automatically transferred to him, Bailey continued to reside in the house, making tax and utility payments, and maintaining the property. In 2018, approximately six years after Masters' death, Bailey learned of the title issue when he experienced trouble having work done on the house.   Bailey contacted an attorney about a month later, and the attorney advised him of the need to probate the will.   Bailey applied to probate the will in late March 2019, and he did not dispute that he had filed his application more than four years after Masters' death.   In response, Appellees presented evidence that Bailey had some experience with and knowledge of land titles, having conveyed and received title to real property earlier in his life.   The record shows that Bailey never had legal title to the house, and the house's tax records revealed that Masters was the sole owner of the house in the years following his death.

We find that there is legally sufficient evidence to support the trial court's implied finding of default.   Bailey had exclusive possession and control over the will in the years prior to his filing of the application to probate the will.   He also knew of land titles and their general function. And unlike the husband in *Ramirez*, there is no evidence that Bailey had any legal title to the house. Rather, the record suggests that Bailey resided in the house with Masters, who retained sole title to the house.   Nor does Bailey dispute that he failed to file an application to probate the will within four years of Masters' death.

---

[4] The U.S. Supreme Court's holding in *Obergefell v. Hodges* which recognized a constitutional right for same sex couples to wed, was decided on June 26, 2015, well after Masters' death.   *Obergefell v. Hodges*, 576 U.S. 644, 675-76 (2015).   Bailey asserts no claim here that he was in fact legally married to Masters, nor does he assert that *Obergefell* applies retroactively, which itself is an unresolved question.   *See Pidgeon v. Turner*, 538 S.W.3d 73, 84 (Tex. 2017) (declining to decide retroactivity of *Obergefell*); *but see Ranolls v. Dewling*, 223 F.Supp.3d 613, 622 (E.D. Tex. 2016) (deciding *Obergefell* does apply retroactively).

11

As a result, because there is some evidence in support of the trial court's implied finding of default, we hold that legally sufficient evidence supports the finding. *See Ramirez*, 2018 WL 454733, at *2.

## B. Factual Sufficiency

Next, we consider whether the evidence is factually insufficient to support the trial court's implied finding of default. Like *Ramirez*, the property in Masters' estate was distributed by some means to his heirs in accordance with his will. And in the years before his death, Masters resided with Bailey in the house, and he gifted Bailey the house in the will. Under the impression that title transferred automatically to him through the will and that no further action was necessary, Bailey continued to reside in the house, pay its associated property taxes and utility bills, and maintain it. Again, Bailey did not dispute that he failed to file the will within four years of Masters' death, positing that he (Bailey) did not believe probate was necessary to transfer title to the house to himself.

The trial court here was aware of the *Ramirez v. Galvan* opinion when it decided the case and acknowledged some of the factual similarities to this case. At the hearing, however, the trial judge distinguished *Ramirez* in two ways. First, the trial court noted that the movant in *Ramirez* was the spouse of the decedent who already owned half of the property through the couple jointly purchasing the property. Second, the trial judge reasoned that Bailey "knows about deeds" and that he "understands property is transferred by deed, not just because somebody says it in a Will[.]" In cross-examination, Bailey initially denied owning any other property. But he was then shown deed records on a property deeded to him after his own mother's death, and a second property where he was used as an intermediary to transfer property by deed between relatives. Copies of those deeds were admitted as evidence.

12

We also agree that *Ramirez* stands on a different footing. The husband in *Ramirez* already held some legal title to the property while Bailey had no titled interest. A person with undisputed legal title to an undivided interest in property might feel safe residing there, but a person with no legal title would enjoy no similar assurance. Relevant to that distinction, the evidence supported the inference that Bailey should have appreciated the importance of land titles, as he had some experience in the transfer of property through written deeds. The court in *Ramirez* also noted that the husband was an immigrant from Veracruz whose first language was not English, such that he required a translator to testify. 2018 WL 454733, at *1. Nothing in the testimony suggests that Bailey had any similar impediments. The distinction is significant in this respect: prior cases have found that a will proponent's belief that probate was unnecessary, when coupled with some other circumstance, might support a finding of no default. *See*, *e.g.*, *Allen,* 407 S.W.3d at 341 (belief based on attorney's erroneous advice); *In re Est. of Perez*, 324 S.W.3d 257, 263 (Tex.App.--El Paso 2010, no pet.) (evidence of will proponent's limited financial resources, limited educational background, and belief that attorney had taken care of the matter supported trial court finding of no default); *Chovanec*, 881 S.W.2d at 137 (belief based in part on action of third party who paid royalty interests); *Kamoos*, 570 S.W.2d at 9 (additional factor of lack of financial resources). Here, the record contains Bailey's stated belief that title automatically passed under the un-probated will, but no additional factor substantiating that belief. In effect, the record only supports his belief based on ignorance of the law, which by itself cannot support a finding of a lack of default. *See Marshall*, 2022 WL 1273305, at *3.

Based on our review of the record, including the facts recounted above, we conclude that the trial court's implied finding of default is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Bailey's Issue One is overruled.

## C. Small-Estate Affidavit

Finally, Bailey argues in Issue Two that the trial court's order approving Appellees' small-estate affidavit is "wrong and unjust," reasoning that Bailey has resided in and maintained the house since Masters' death and that he would likely lose possession of the house if the small-estate affidavit is upheld. Bailey asks this Court, "in equity and fairness, [to] grant [Bailey] the homestead rights of a surviving spouse . . . [and] allow [Bailey] to remain in the [house] for the remainder of his life with all the rights and duties of a surviving spouse." Bailey offers no independent legal authority for this Court to do so, nor to set aside the trial court's order approving the small-estate affidavit.

Moreover, because we resolve the issue of default against him, Bailey lacks standing to challenge the validity of Appellees' small-estate affidavit. In a probate proceeding, a party only has standing to bring a challenge to an issue if they have an interest in the estate. *See Estate of Aguilar*, No. 04-15-00688-CV, 2017 WL 1244447, at *5 (Tex.App.--San Antonio Apr. 5, 2017, pet. denied) (mem. op.) (listing parties who have standing to be interested in an estate), *citing* TEX.EST.CODE ANN. §§ 22.001, 22.018, *and Estate of Forister*, 421 S.W.3d 175, 177 (Tex.App.--San Antonio 2013, pet. denied). Because we have found that Bailey was not the executor of Masters' will, and the record does not show he has any other interest in the estate, he lacks standing to challenge the validity of the small-estate affidavit. For these reasons, we decline to overturn the trial court's order approving Appellees' small-estate affidavit or granting his requested relief.

Bailey's Issue Two is overruled.

## VII. CONCLUSION

We affirm the trial court's orders denying Bailey's application to probate Masters' will as

14

a muniment of title and approving Appellees' small-estate affidavit.

JEFF ALLEY, Justice

July 20. 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.